UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

TOBI WHITE,

        Plaintiff,

  -against-

                                    05 Civ. 2937 (CM)

FUJI PHOTO FILM USA, INC.,

        Defendant.

------------------------------------------------------------x

### DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

McMahon, J.:

In this race discrimination/hostile work environment action, defendant has moved for summary judgment. Plaintiff has not responded to the motion, and the court has received a letter from counsel for plaintiff indicating that she would not be filing a response. The court will, therefore, consider whether defendant is entitled to summary judgment as provided in Fed. R. Civ. P. 56 (e) ("If the adverse party does not respond, summary judgment, if appropriate, shall be entered against the adverse party.")

After considering the record and defendant's arguments, the motion is granted, and the complaint is dismissed.

### STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff was hired as an administrative secretary in the Quicksnap Department on October 9, 2001. [Id., Ex. B: Deposition of Tobi White, dated December 14, 2005 ("White Dep. Vol. I"), 43:13-16; 44:2-4; 54:18-23]. By late 2001, Fuji retained an outside consultant to meet with all secretaries individually and evaluate their positions. [Id., Ex. B: White Dep. Vol. I, 48:21 to 49:4;

49:24 to 50:9; 51:14-19; 61:10 to 62:11]. Plaintiff discussed her own job responsibilities during her meeting with the outside consultant. [Id., Ex. B: White Dep. Vol. I, 50:10-14; 51:14-16].

Several months later, in April 2002, as part of a company-wide reorganization, Plaintiff was reassigned to work for Ms. Schaffer in the Marketing Department for Digital Cameras. [Id., Ex. B: White Dep. Vol. I, 45:6-8; 59:5-14; 62:25 to 63:5]. Although she was not officially reassigned until April 2002, Plaintiff had assisted Ms. Schaffer since January 2002. [Id., Ex. B: White Dep. Vol. I, 66:10-14; Ex. C: Deposition of Susan Schaffer, dated January 12, 2006 ("Schaffer Dep."), 8:7-8; 8:21 to 9:6].

In approximately April 2002, Plaintiff's title changed from administrative secretary to office assistant. [Id., Ex. B: White Dep. Vol. I, 46:7-13]. Plaintiff's title changed as a result of information she provided to the outside consultant several months prior; it was not due to the company's reorganization in April 2002. [Id., Ex. B: White Dep. Vol. I, 47:25 to 48:12]. Despite the title change, Plaintiff considered this the same level position. [Id., Ex. B: White Dep. Vol. I, 46:25 to 47:2; 48:19-21]. There was no change in salary and no change in grade. [Id., Ex. B: White Dep. Vol. I, 46:14-20; 51:25 to 52:2]. Plaintiff considered her reassignment to the Marketing Department to be a positive move for her. [Id., Ex. B: White Dep. Vol. I, 63:25 to 64:5].

**A.      Plaintiff Is Unable To Meet The Increased Demands Of Her Job**

The Marketing Department was, at times, fast paced and chaotic. [Id., Ex. B: White Dep. Vol. I, 126:24 to 127:5; Ex. C: Schaffer Dep., 18:13-17]. Indeed, Plaintiff admitted that it was busier than her prior department. [Id., Ex. B: White Dep. Vol. I, 63:21-24]. Plaintiff concedes that Ms. Schaffer was strict and demanding of everyone in the department. [Id., Ex. B: White Dep. Vol. I, 68:2-4]. Ms. Schaffer agreed that, due to the dynamic, fast-paced environment, she was demanding of all employees that reported to her. [Id., Ex. C: Schaffer Dep., 18:13-17; 50:14-19].

Plaintiff's job duties included, among other things, answering phones, taking messages, preparing memos, filing, assisting with product samples and monthly reports. [Id., Ex. C: Schaffer Dep., 9:13-19]. Plaintiff supported four product managers and an intern in addition to Ms. Schaffer. [Id., Ex. B: White Dep. Vol. I, 45:9-17; Ex: C, Schaffer Dep., 17:14-21].

Plaintiff was often frustrated by the very fast pace of the department. [Id., Ex. C: Schaffer Dep., 18:12-13]. Plaintiff repeatedly advised Ms. Schaffer that it would be much "easier" for her (Plaintiff) to perform her job if the managers would better plan rush projects and requests. [Id., Ex. C: Schaffer Dep., 18:17-21]. However, this was not often possible because of business needs (i.e., market changes, the sales group, or the customers). [Id., Ex. C: Schaffer Dep., 18:22 to 19:2]. Ms. Schaffer, recognizing that Plaintiff may have been overwhelmed, advised Plaintiff that if she received urgent requests from several managers and she was not able to complete them, she should bring those situations to Ms. Schaffer. [Id., Ex. C: Schaffer Dep., 20:3-11]. Ms. Schaffer recalls few instances when Plaintiff brought those situations to her attention. [Id., Ex. C: Schaffer Dep., 20:12-13].

Ms. Schaffer first raised performance issues with Plaintiff in the Summer, 2002. [Id., Ex. B: White Dep. Vol. I, 69:15-18]. Ms. Schaffer raised the following issues with Plaintiff:

*     Plaintiff used the intercom to advise a manager that his scheduled visitor was present for a meeting and a Fuji competitor was sitting near Plaintiff's desk [Id., Ex. B: White Dep. Vol. I, 69:23-25];

*     Plaintiff needed to complete monthly reports on time [Id., Ex. B: White Dep. Vol. I, 71:20 to 72:8];

*     Plaintiff ordered lunch for a meeting, but did not set it up [Id., Ex. B: White Dep. Vol. I, 69:23-25].

In addition, Plaintiff failed to fulfill simple requests such as timely filing, stamping incoming mail with a "received" date, and taking complete phone messages including phone numbers, names

and other relevant information. [Id., Ex. C: Schaffer Dep., 16:17-22; 17:2-6; 19:5-11]. Plaintiff also appeared frustrated with manager requests, would not complete them and then failed to inform Ms. Schaffer (or the appropriate manager) that the assigned task was incomplete. [Id., Ex. C: Schaffer Dep., 19:17-24].

Even though Plaintiff received an overall satisfactory rating on her November 2002 Performance Review, Ms. Schaffer continually discussed with Plaintiff aspects of her performance that needed improvement. [Id., Ex. C: Schaffer Dep., 16:9-13; 16:17-22].

**B.      Plaintiff Is Placed On A PIP And Probation, Then Successfully Completes Program**

In 2003, Plaintiff continued to have meetings with Ms. Schaffer regarding performance. [Id., Ex. A: White Dep. Vol. I, 100:3-9]. Plaintiff was placed on a formal warning period from December 5, 2003 to January 5, 2004, later extended until January 30, 2004 because of the holidays. [Id., Ex. B: White Dep. Vol. I, 134:10 to 135:4; 139:2-5, 139:22 to 140:10; Ex. C: Schaffer Dep., 30:11 to 31:6]. Under this performance improvement plan ("PIP"), Ms. Schaffer outlined Plaintiff's responsibilities and worked with her to achieve that plan. [Id., Ex. C: Schaffer Dep., 42:9-14]. Plaintiff admits that the objectives in the PIP were tasks that fell within her normal duties. [Id., Ex. B: White Dep. Vol. I, 135:9-24]. Plaintiff agreed that most of the objectives listed in the PIP were reasonable except: (1) filing papers within 2-3 days of assignment at certain times of the year; and (2) keeping the sample room organized because people would constantly disorganize it. [Id., Ex. B, White Dep. Vol. I, 135:9 to 138:25].

Plaintiff was then placed on a second 30-day probationary period, effective February 16 to March 16, 2004. [Id., Ex. B: White Dep. Vol. I, 157:17-22]. Plaintiff was aware that if she did not successfully complete her performance objectives she would be terminated by Fuji. [Id., Ex. B: White Dep. Vol. I, 162:4-7].

Not until after she was placed on probation did Plaintiff file an internal complaint of racial discrimination/harassment. [Id., Ex. B: White Dep. Vol. I, 162:17-22]. This was Plaintiff's first written complaint within the Company. [Id., Ex. B: White Dep. Vol. I, 164:2-5]. She complained that being placed on probation was "an additional form of harassment." [Id., Ex. D: Letter from Plaintiff, dated February 17, 2004]. Sharon Virgulak ("Virgulak"), Director of Employee Relations, Human Resources, responded to Plaintiff's complaint by letter dated February 23, 2004. [Id., Ex. B: White Dep. Vol. I, 167:16-19]. Ms. Virgulak explained that Plaintiff was not being harassed, but was placed on the PIP and probation because of ongoing performance issues. [Id., Ex. E: Memorandum from Ms. Virgulak, dated February 23, 2004].

Plaintiff successfully completed her objectives during her second 30-day probationary period and was removed from probation. [Id., Ex. F: Deposition of Tobi White, dated December 30, 2005 ("White Dep. Vol. II"), 217:13-24, 252:8-21; Ex. C: Schaffer Dep., 44:13-20].

**C.     Plaintiff's Working Relationship With Ms. Schaffer**

Plaintiff described her day-to-day interactions with Ms. Schaffer as follows: "There wasn't much interaction but she just always seemed she didn't like me. Like I annoyed her or something." [Id., Ex. B: White Dep. Vol. I, 68:16-23]. According to Plaintiff, Ms. Schaffer said nothing specific to Plaintiff, "More so it was her tone and she was very short with me." [Id., Ex. B: White Dep. Vol. I, 68:24 to 69:3]. She felt that Ms. Schaffer "spoke down" to her. [Id., Ex. B: White Dep. Vol. I, 74:5-11]. When asked to cite specific examples to support Plaintiff's view that Ms. Schaffer did not "like" Plaintiff and that Plaintiff "annoyed" Ms. Schaffer, Plaintiff responded: "Her tone, the way she looked at me, the way she spoke down to me." [Id., Ex. B: White Dep. Vol. I, 74:5-11].

Plaintiff could only recall one negative exchange with Ms. Schaffer prior to April 2002. [Id., Ex. B: White Dep. Vol. I, 66:15-19]. She explained that Ms. Schaffer was "not nice" to Plaintiff

and was "[v]ery rude, obnoxious" and "[v]ery unprofessional" in "interrupt[ing]" Plaintiff. [Id., Ex. B: White Dep. Vol. I, 64:21 to 65:3].

> I can recall being on the phone with a VP that was traveling and needed some type of assistance. There was a problem with his flight. I don't recall. It was an urgent call, and she interrupted the phone call, and although I tried to tell her that I couldn't assist her at that particular moment, she still insisted.
> When I tried to explain to her after the phone call why I couldn't assist her, she was still rude about it.

[Id., Ex. B: White Dep. Vol. I, 65:10-19].

After April 2002 when Plaintiff began reporting to Ms. Schaffer, she claimed that Ms. Schaffer "yelled" at her for various issues: not unpacking the belongings of a manager who was out on leave, missing cameras, relaying phone messages, and not correcting an error on a presentation before copying it for distribution. [Id., Ex. B: White Dep. Vol. I, 112:3-10; 113:20-23; 119:7-10, 13-25].

In the Summer 2002, Plaintiff first spoke with Fuji's Director of Employee Relations, Human Resources, Ms. Virgulak, about Ms. Schaffer. [Id., Ex. B: White Dep. Vol. I, 75:5-16; 76:19-22]. Plaintiff cannot recall what she specifically told Ms. Virgulak during that first meeting, but recalls talking to Ms. Virgulak about "the overall treatment that [Plaintiff had] been receiving from [Ms. Schaffer]." [Id., Ex. B: White Dep. Vol. I, 76:23 to 77:6]. Ms. Virgulak agrees that Plaintiff spoke to her (Virgulak) about Ms. Schaffer and the "personality conflicts" between them. [Id., Ex. G: Deposition of Sharon Virgulak, dated January 12, 2006 ("Virgulak Dep."), 20:3-6]. Ms. Virgulak regularly followed-up with Plaintiff regarding the "personality conflict" involving Plaintiff and Ms. Schaffer. [Id., Ex. G: Virgulak Dep., 28:11-18]. Plaintiff admitted that Ms. Virgulak always met with Plaintiff when Plaintiff asked to meet. [Id., Ex. B: White Dep. Vol. I, 103:24 to 104:5].

Plaintiff contends that she told Ms. Virgulak that she (Plaintiff) "felt like [she] was being discriminated against." [Id., Ex. B: White Dep. Vol. I, 77:20 to 78:4]. Plaintiff "felt excluded" in that she was not invited to attend manager department meetings, was not invited to lunch, and did not get "recognition." [Id., Ex. B: White Dep. Vol. I, 78:8-16, 80:24 to 81:2]. Nevertheless, Plaintiff stated that, in her prior department, she did not attend department meetings and was not even aware if any meetings took place. [Id., Ex. B: White Dep. Vol. I, 85:19-23]. In addition, Plaintiff only once went out to lunch with one manager in her prior department but says she did not feel left out. [Id., Ex. B: White Dep. Vol. I, 80:4-16]. As to the so-called "recognition", Plaintiff testified as follows:

> A. I'm sure there are managers that have come to [Ms. Schaffer] and said, you know, that I've helped them out and they were appreciative, and she didn't, you know, get back to me.
>
> Q. Do you know which managers did that?
>
> A. I believe Robert Cartwright did, or even helping someone over the phone, a sales rep, with some information.
>
> ***
>
> Q. Do you remember which sales reps you helped out that would be in a situation where you didn't get any recognition for anything?
>
> A. I can't recall anything.
>
> Q. Do you know what Robert Cartwright told Ms. Schaffer about your work?
>
> A. I'm sure that I helped him out with something, and he would have gone back to her.
>
> Q. Do you know what you helped him out with?
>
> A. Maybe his assistant wasn't in a particular day and he was asking me to make photocopies or something. I really don't recall.

[Id., Ex. B: White Dep. Vol. I, 82:3-10, 82:14 to 83:2].

Ms. Virgulak recommended Plaintiff speak with Ms. Schaffer about these issues, but

Plaintiff chose not to do so. [Id., Ex. B: White Dep. Vol. I, 87:10-14; 88:3-5]. Plaintiff explained that she did not speak with Ms. Schaffer because she did not feel "comfortable." [Id., Ex. B: White Dep. Vol. I, 88:3-6]. Plaintiff did not recall telling Ms. Virgulak that she did not raise the issues with Ms. Schaffer. [Id., Ex. B: White Dep. Vol. I, 88:7-9].

Plaintiff also felt discriminated against because she viewed her 2002 Performance Review as unfair. [Id., Ex. B: White Dep. Vol. I, 88:10-20]. According to Plaintiff, the review was "inaccurate" and "didn't take into consideration any of [her] job – how well [she] did [her] job in the previous department. There was no input from managers. The fact that it was rushed." [Id., Ex. B: White Dep. Vol. I, 88:20 to 89:5].

Nevertheless, Plaintiff admits that she wrote and submitted the following on her Employee Self-Assessment Worksheet attached to her 2002 Performance Review:

* "Due to drastic increases in responsibilities, normal day-to-day work is neglected because of time sensitive projects would require longer time to complete;"

* "I feel I have taken as much initiative as time and department measures allow. Better solution on how to do a job better or more efficient."

* "Improve communication and overall work relationship with supervisor."

[Id., Ex B: White Dep. Vol. I, 89:17-25, 94:21 to 95:4, 96:3-16, 97:25 to 98:8].

Plaintiff tape-recorded conversations with her managers and human resources managers, without their knowledge, because she wanted to use these secret recordings as "evidence" in her lawsuit. [Id., Ex. F, White Dep. Vol. II, 382:9-12, 383:19-21; 383:25 to 384:7]. However, at her deposition, Plaintiff admitted that she could not recall any evidence of wrongdoing by Fuji on these tapes. [Id., Ex. F, White Dep. Vol. II, 384:3-7]. No such evidence has been submitted to the court.

### D. Fuji's Anti-Discrimination Policies

Fuji maintained and disseminated anti-discrimination policies to its employees, including Plaintiff. [Id., Ex. F: White Dep. Vol. II, 251:5-14]. These policies were contained in Fuji's employee handbook. [Id., Ex. F: White Dep. Vol. II, 375:22 to 376:3]. Plaintiff signed a form acknowledging receipt of Fuji's employee handbook and was aware of Fuji's reporting complaint procedure. [Id., Ex. F: White Dep. Vol. II, 376:4-6, 12-18; 379:9-12].

### DISCUSSION

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. Proc. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "Conclusory allegations, conjecture and speculation, however, are insufficient to create a genuine issue of fact." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted). Plaintiff "must offer some *hard evidence* showing that [her] version of the events is not wholly fanciful." D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998) (emphasis added).

"[I]n the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination." Schwapp v. Town of Avon, 110 F.3d 106, 110 (2d Cir. 1997). "[M]ere speculation and conjecture is insufficient to preclude the granting of the motion." Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). "Courts within the Second Circuit have not hesitated to grant defendants summary judgment in such case where . . . plaintiff has offered little or no evidence of discrimination." Alphonse v. State of Conn. Dep't of Admin. Servs., 02 CV 1195, 2004 WL 904076, at *7 (D. Conn. Apr. 21, 2004) (quoting Simpri v. City of N.Y., 00 CV 6712, 2003 WL 23095554 (S.D.N.Y. Dec 30, 2003) (citations omitted).

Although Plaintiff here proffers allegations of discrimination, they are all conclusory and

devoid of any concrete evidence establishing discrimination. Therefore, Defendant's motion for summary judgment should be granted.

**A.**     **Race Discrimination Claims**

To prevail on a claim of employment discrimination, under the familiar McDonnell Douglas test, a plaintiff initially is required to make out a *prima facie* case of discrimination and, if the defendant articulates a legitimate nondiscriminatory reason for the adverse actions taken against the plaintiff, the burden shifts back to the plaintiff to prove that the defendant intentionally discriminated against him. James v. N. Y. Racing Ass'n, 233 F.3d 149, 153-54 (2d Cir. 2000); Smalls v. Allstate Ins. Co., 396 F. Supp. 2d 364, 370 (S.D.N.Y. 2005). "[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507, 113 S. Ct. 2742, 2747, 125 L. Ed. 2d 407 (1993) (citation omitted). The United States Supreme Court's ruling in Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147, 120 S. Ct. 2097, 2108, 147 L. Ed. 2d 105 (2000), specifically reaffirmed the requirement that a Plaintiff must submit sufficient evidence of intentional discrimination: "it is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." Id. (quoting St. Mary's Honor Ctr., 509 U.S. at 519 (emphasis in original)); Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (same).

To establish a *prima facie* case of race discrimination under Title VII (42 U.S.C. § 2000e), a plaintiff must show: (i) membership in the protected class; (ii) qualification for the position; and (iii) an adverse employment action; (iv) arising under circumstances that raise an inference of discrimination. Bennett v. Watson Wyatt & Co., 136 F. Supp. 2d 236, 246 (S.D.N.Y. 2001) (granting summary judgment in a race discrimination and hostile work environment case); Adeniji

v. Admin. for Children Servs., 43 F. Supp. 2d 407, 418-19 (S.D.N.Y. 1999) (granting summary judgment in a race, national origin, and religious discrimination, retaliation and sexual harassment case).

**1. Plaintiff Suffered No Adverse Employment Action**

An employee suffers an adverse employment action if a "materially adverse change" in the terms and conditions of her employment takes place. Smalls, 396 F. Supp. 2d at 370 (citations omitted). A "materially adverse change" must be more disruptive than a "mere inconvenience or an alteration of job responsibilities." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (citations omitted). The Second Circuit explained that "materially adverse change" might be a termination of employment, a demotion, a material loss of benefits, or significantly diminished material responsibilities. Id. However, "not every unpleasant matter creates a cause of action." Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997).

None of Plaintiff's allegations qualifies as adverse employment action. See Smalls, 392 F. Supp. 2d at 371 ("being yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments . . . do not rise to the level of adverse employment action . . . because they [do] not have a material impact on the terms and conditions of Plaintiff's employment"); Durant v. Nynex, 101 F. Supp. 2d 227, 233 (S.D.N.Y. 2000). ("Negative evaluations alone, without any accompanying adverse result, however, are not cognizable"); Valentine v. Standard & Poor's, 50 F. Supp. 2d 262, 284 (S.D.N.Y. 1999) ("negative reviews did not lead to any immediate tangible harm or consequences" and therefore, do not constitute adverse actions materially altering the conditions of employment), aff'd, 205 F.3d 1327 (2d Cir. 2000); see also Stembridge v. City of N.Y., 88 F. Supp. 2d 276, 283 (S.D.N.Y. 2000) (no adverse employment action found with respect to warning that advised Plaintiff that continuation of improper behavior could lead to disciplinary

action).

The law does not support a claim that a title change, with no change in salary or benefits, is considered an adverse employment action. Smalls, 392 F. Supp. 2d at 371 (where employee retained same position, same salary and benefits, then no adverse action); see also Mishk v. Destefano, 5 F. Supp. 2d 194, 202 (S.D.N.Y. 1998) (lateral transfer is not adverse employment action). Plaintiff testified that her title changed from administrative secretary to office assistant, with no change in salary and grade. She, therefore, admittedly suffered no material adverse change altering the conditions of her employment.

Plaintiff has, therefore, suffered no adverse employment action under any of her theories and is unable to establish her *prima facie* case.

**2. Fuji Articulated Legitimate Nondiscriminatory Business Reasons For Plaintiff's Placement On The PIP And Probation and Plaintiff Did Not Establish That Those Reasons Were Pretextual**

Even if I were to assume that Plaintiff met her minimal burden at the first McDonnell-Douglas stage, the record evidence shows that Plaintiff was a poor job performer. She exhibited poor communication skills, was inconsistent in following through on tasks, and was inconsistent with her filing or meeting deadlines. According to defendant, it was for these reasons that she was put on probation.

Even assuming that Plaintiff's view of her work performance was legitimate, her disagreement with Ms. Schaffer's assessment of her conduct is insufficient, standing alone, to establish pretext. See Das v. Our Lady of Mercy Medical Ctr., 00 CV 2574, 2002 WL 826877, at *7 (S.D.N.Y. April 30, 2002) (plaintiff's claims that he was at all times an exemplary employee and blanket denial that he made any of the mistakes with which he was charged are insufficient to establish pretext and defeat defendant's motion). "The mere fact that [Plaintiff] may disagree with [her] employer's

actions or think that [her] behavior was justified does not raise an inference of pretext[.]" Estrada v. Lehman Bros., Inc., 99 CV 8559, 2001 WL 43605, at *5 (S.D.N.Y. Jan. 18, 2001).

Moreover, rather that curing any performance deficiencies, Plaintiff spent much time engaged in writing memo retorts responding to the performance deficiencies and blaming others. Plaintiff blamed Ms. Schaffer, other managers, and other administrative assistants and personnel for her own deficiencies. Plaintiff cannot establish pretext by:

> faulting others for, or otherwise rationalizing, problems legitimately perceived by [her] employer …. Plaintiff's fundamental disagreement with the conclusions [her] supervisors drew from incidents which [she] admits occurred, and [her] subjective belief that they should not have reflected badly on [her] performance because they were someone else's fault, is not evidence that [her] supervisors' appraisals were a sham, invented to mask discrimination.

Gambello v. Time Warner Communications, Inc., 186 F. Supp. 2d 209, 224 (E.D.N.Y. 2002) (citation omitted). Plaintiff cannot overcome this undisputed evidence with her uncorroborated conjecture.

Plaintiff has offered no evidence, and makes no argument, to meet her burden at the third stage of the McDonnell-Douglas analysis. She is thus not entitled to proceed to trial.

### 3. Plaintiff Has Also Failed To Establish A *Prima Facie* Case Of Pay Disparity

Plaintiff also alleges that she was paid a lower salary than similarly situated non-African American employees performing the same or similar duties.

To establish a *prima facie* case of unequal pay for equal work on the basis of race, however, a Plaintiff must show that (1) she is a member of a protected class; and (2) she was paid less than non-minority members of her class for work requiring substantially the same responsibility. Belfi v. Prendergast, 191 F.3d 129, 140 (2d Cir. 1999). In addition, a plaintiff must also produce evidence

of discriminatory animus of race-based salary discrimination. Id. In meeting this burden, a plaintiff must show that she shared sufficient employment characteristics with that comparator so that they could be considered similarly situated. McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001).

Plaintiff has not met this burden. She has not provided the court with any evidence at all demonstrating that she was paid less than non-minority employees who were doing the same work as she. At her deposition, plaintiff -- an office assistant -- improperly compared herself to three employees (Enza Materia, Rita Vaswani, and Sona Marusian) who have jobs completely different from hers. All three employees are department coordinators. [Sneirson Aff., Ex. D: White Dep. Vol. II, 391:9-13]. Their job functions differ in certain respects from plaintiff's. Each of these individuals held the title of senior secretary prior to the change of titles; plaintiff was an administrative secretary. [Id., Ex. F: White Dep. Vol. II, 392:9-12, 393:2-5, 393:10 to 394:4]. Plaintiff offers no evidence that these individuals were in fact "similarly situated" to her. See Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95-96 (2d Cir. 1999)

**B.**     **Plaintiff's Hostile Work Environment Claim**

To sustain a claim for hostile work environment based on race pursuant to Title VII, a plaintiff must produce evidence showing that her "workplace was permeated with discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (quotation marks and citations omitted); Patterson v. County of Oneida, 375 F.3d 206, 227 (2d Cir. 2004). Courts must look to a totality of the circumstances to determine whether an environment is "hostile" or "abusive" and should consider the following nonexclusive list of factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance;

and (4) whether it unreasonably interferes with an employee's work performance." <u>Harris</u>, 510 U.S. at 23, 114 S. Ct. 367, 126 L. Ed. 2d 295. Plaintiff's evidence, if any, must show that the conduct at issue created an environment that is both objectively and subjectively hostile. <u>Richardson v. N.Y. State Dep't of Corr. Serv.</u>, 180 F.3d 426, 436 (2d Cir. 1999). Plaintiff must demonstrate not only that she found the environment offensive, but that a reasonable person also would have found the environment to be hostile or abusive. <u>Harris</u>, 510 U.S. 17, 21-22, 114 S. Ct. 367, 126 L. Ed. 2d 295.

Even when a plaintiff establishes that she was exposed to an objectively and subjectively hostile work environment, "she will not have a claim under Title VII unless she can also demonstrate that the hostile work environment was caused by animus towards her as a result of her membership in a protected class." <u>Sullivan v. Newburgh Enlarged Sch. Dist. Clarence Cooper</u>, 281 F. Supp. 2d 689, 704 (S.D.N.Y. 2003). "An environment that would be equally harsh for all workers, or that arises from personal animosity, is not actionable under the civil rights statutes." <u>Forts v. City of N.Y. Dep't of Corr.</u>, No. 00 Civ. 1716, 2003 WL 21279439, at *4 (S.D.N.Y. June 4, 2003).

Indeed, Title VII is not a general civility code. <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 78-79, 118 S. Ct. 998, 1001-02, 140 L. Ed. 2d 201 (1998). "Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency." <u>Ennis v. Sonitrol Mgmt. Corp.</u>, No. 02-CV-9070 (TPG), 2006 WL 177173, at *9 (S.D.N.Y. Jan. 25, 2006) (citations omitted).

Plaintiff claimed at her deposition that Ms. Schaffer created a hostile environment by: (i) her overall "tone" and speaking "down" to her; (ii) yelling at Plaintiff; (iii) not inviting her to management staff meetings; (iv) not inviting her to lunch; and (v) not giving her "recognition." Even accepting all of these allegations as true, they do not create a hostile work environment.

Plaintiff's testimony might be sufficient to create a triable issue of fact concerning the hostile work environment claim – provided, of course, that she introduced some evidence that race was the reason why Ms. Schaffer behaved toward plaintiff as she did. However, there is no such evidence in the record before me.

Where there is no evidence that an allegedly hostile work environment was motivated by a plaintiff's race, the claim must be dismissed. Jessamy v. City of New Rochelle, 292 F. Supp. 2d 498, 512 (S.D.N.Y. 2003) ("the case law proves . . . that the absence of such conduct [of any overtly racial character] is a factual omission that is necessarily fatal to a race-based hostile work environment claim"). At her deposition, plaintiff could not point to a single race-based comment from Ms. Schaffer or any other manager she reported to at Fuji. [See Sneirson Aff., Ex. F: White Dep. Vol. II, 387:23-25]. By defaulting on this motion, she has failed to meet her burden of demonstrating a connection between her race and her supervisor's actions.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment should be granted and the Complaint should be dismissed, with prejudice.

Dated: April 7, 2006

_____
U.S.D.J.

BY FAX TO ALL COUNSEL